IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS MURPHY, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF NATHAN
KEE CHARLEY, deceased, and REBECCA SUAZO,

    Plaintiffs,

    v.                                                                                                      No. 24-CV-00963 DHU-LF

TAOS COUNTY BOARD OF COUNTY
COMMISSIONERS, BRENT JARAMILLO TAOS
COUNTY MAGAER, TOWN OF TAOS, CHIEF OF
POLICE JOHN WENTZ, in his individual and official
capacity, OFFICER TAYLOR GWINN, in her individual
and official capacity as a law enforcement officer and in
her individual and official capacity as an investigator for
the NEW MEXICO OFFICE OF THE MEDICAL
INVESTIGATOR, DEFENDANT OFFICE OF THE
MEDICAL INVESTIGATOR, OFFICER BRIAN
GARCIA, in his individual and official capacity, and
OFFICER ANTHONY MARTINEZ, in his individual and
official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On August 25, 2023, Nathan Kee Charley ("Mr. Charley") was struck and killed by a vehicle after he walked away from the parking lot of a Speedway gas station in the El Prado area of Taos, New Mexico. Doc. 21 (First Amend. Compl.) ¶¶ 104-109; 111-13. Mr. Charley, who was intoxicated, had been dropped off at the gas station parking lot by a Town of Taos police officer after being involved in a domestic dispute with his partner at his residence. *Id*. ¶ 22. After his death, Plaintiffs Dennis Murphy, as personal representative of the wrongful death claim of Mr. Charley, and Rebecca Suazo, Mr. Charley's domestic partner, brought this lawsuit against several defendants, including Defendant Taos County Board of County Commissioners ("Defendant Taos

1

County" or the "County") and Taos County Manager Brent Jaramillo. *Id*. Defendant Taos County then filed the instant Motion to Dismiss for Failure to State a Claim, seeking the dismissal of all claims against it, and Defendant Jaramillo filed his Motion to Dismiss Based on Qualified Immunity. Doc. 26; Doc. 25.

The Court held a hearing on these motions on April 16, 2025 ("Motions Hearing"). Doc. 57. After reviewing the parties' briefs and considering the arguments made at the hearing, the Court granted Defendant Brent Jaramillo's motion based on qualified immunity. *See* Mot. Hr'g Tr. at 73:10-19.[1] Now, having considered the pleadings, the record before the Court, the arguments made by Counsel at the Motions Hearing, and the applicable law, the Court will **GRANT** Defendant County's Motion to Dismiss.

## I. BACKGROUND[2]

Mr. Charley's partner, Rebecca Suazo called Taos Central Dispatch on the evening of August 25, 2023, to report that Mr. Charley was intoxicated and that she needed assistance to remove him from their home. Doc. 21, ¶ 22. Two Town of Taos police officers arrived at the residence and spoke to Mr. Charley and Ms. Suazo about the domestic dispute and discussed with them whether Mr. Charley could find a place to sleep that evening. The officers eventually determined that Mr. Charley had no friends or family in the area and the family did not have the funds to pay for a hotel for the night. *Id.* ¶¶ 34-35; 51-54. One of the Town of Taos police officers

---

[1] This Memorandum Opinion and Order cites to the court reporter's unofficial transcript of the April 16, 2025 Motion Hearing as "Mot. Hr'g Tr. at page:line(s)." Page citations are subject to change on the official, edited version of the transcript.

[2] For this factual background, the Court accepts as true all well-pleaded factual allegations in Plaintiffs' First Amended Complaint and views the allegations in the light most favorable to Plaintiffs. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

2

informed Ms. Suazo that "unfortunately, we don't have a detox center or anything of that sort." *Id.* ¶ 53.

The officers then informed Ms. Suazo that they would take Mr. Charley for a ride, and while they did not know where, they informed Ms. Suazo they would keep Mr. Charley out of the residence for the night. *Id.* ¶ 87. The officers patted Mr. Charley down after instructing him to place his hands on his head. *Id.* ¶ 93. At this point, the officers knew that Mr. Charley had no wallet, phone, food, money, or water in his possession. Mr. Charley also informed the officers he had glaucoma. *Id.* ¶¶ 97-98. The Taos police officers informed Mr. Charley that should he return to the residence that evening, there would be a good chance he would be arrested. The officers then placed Mr. Charley in the patrol unit and drove him to a Speedway gas station in El Prado, where he wandered away from the parking lot and was struck and killed by a motorist. *Id.* ¶¶ 101-07; 111-13.

Plaintiffs bring several claims against Defendant Taos County, including both federal and state constitutional claims and state tort law claims, all of which the County has now moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As to the federal claims, Plaintiffs allege that the County is liable under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978), for the violation of decedent's constitutional substantive due process rights.[3] As to the state law claims, Plaintiffs allege the County is liable

---

[3] In their First Amended Complaint, Plaintiffs state several causes of action against several defendants. However, as noted by the County, the pleading left some ambiguity as to what claims were being brought specifically against the County and what facts alleged by Plaintiffs supported those claims. *See* Doc. 26 at 10. At the Motions Hearing conducted by the Court, Plaintiffs confirmed that all the federal claims against the County were based on liability under *Monell* for violations of Mr. Charley's substantive due process rights. *See* Mot. Hr'g Tr. at 31, 38-39, 48-74; *see also* Doc. 21 ¶¶ 207-211, Second Cause of Action "Violation of Nathan Charley's Constitutional Right to Life and Liberty;" ¶¶ 212-219, Third Cause of Action "Violation of Nathan Charley's Violation of Due Process Rights;" ¶¶ 270-278, Eleventh Cause of Action "Monell Claim

for assault and battery upon the decedent pursuant under the New Mexico Tort Claims Act, N.M. STAT. ANN. § 41-4-12, and liable for the deprivation of Mr. Charley's rights under the New Mexico Constitution and the negligent hiring, training supervision and retention of Taos County Manager Brent Jaramillo under the New Mexico Civil Rights Act, N.M. STAT. ANN. §§ 41-4A-2 and 41-4A-3.  Plaintiffs also allege that the County is liable to them for the loss of consortium suffered by Mr. Charley's two minor children and Plaintiff Suazo.[4]

## II.
## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). The court's function at the 12(b)(6) stage "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

---

- Custom or Policy Leading to Constitutional Violations;" ¶¶ 279-297, Twelfth Cause of Action "§ 1983 Violation based on Substantive Due Process."

[4]  *See* Doc. 21 ¶¶ 187-206, First Cause of Action "Assault, Battery, and Deprivation of Enumerated Rights Resulting in Wrongful Death – NMSA 1978 § 41-4-12"; ¶¶ 207-211, Second Cause of Action "Violation of Nathan Charley's Constitutional Right to Life and Liberty"; ¶¶ 212-219, Third Cause of Action "Violation of Nathan Charley's Violation of Due Process Rights"; ¶¶ 220-229, Fourth Cause of Action "Negligent Hiring, Training, Supervision, and Retention;" ¶¶ 238-243, Sixth Cause of Action "Loss of Consortium for two minor children John Does 4-5"; ¶¶ 244-249 Seventh Cause of Action "Loss of Consortium for Rebecca Suazo."

However, "[a] plaintiff must go beyond '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' and plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023) (citations omitted). In other words, a complaint must include enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[A] court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

## III.
## DISCUSSION

**A. The Facts Pled by Plaintiffs Do Not Establish a Plausible *Monell* Claim Against Taos County Board of County Commissioners.**

The Court must first determine whether Plaintiffs have made a plausible claim against Defendant Taos County under 42 U.S.C. § 1983 for a violation of decedent's federal constitutional rights. Federal law provides that any person acting under color of state law who subjects another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…" 42 U.S.C. § 1983. In *Monell*, the Supreme Court held that although a local governmental body is a "person" within the meaning of § 1983, a municipality is not vicariously liable under the statute for the alleged unconstitutional acts of its employees under a respondeat superior theory. 436 U.S. at 689, 694, 98 S. Ct. at 2037. However, local governments may be sued under § 1983 "when execution of a government's policy or custom,

5

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury that the government as an entity is responsible under § 1983." *Id.*; *see also Lozman v. City of Riviera Beach*, 585 U.S. 87, 95, 138 S. Ct. 1945, 1951, 201 L. Ed. 2d 342 (2018) ("It is well established that in a §1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'") (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018).

Pursuant to *Monell*, it is now well-settled that a claim for damages under § 1983 against municipal entities or local government bodies requires plaintiffs to show both "1) the existence of a municipal policy or custom, and 2) that there is a *direct causal link* between the policy or custom and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (emphasis added). In addition, it is also well-established that "[a] municipality may not be held liable [pursuant to *Monell*] where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kansas*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447–48 (10th Cir. 1990); *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988)).

A policy or custom for purposes of establishing municipal liability may take the following form:

> a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure

> results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019) (citation omitted).

### 1. Plaintiffs' *Monell* claim.

In this case, Plaintiffs have had some difficulty articulating in a precise manner the custom or policy by the County that can be directly linked to the death of Mr. Charley. In their First Amended Complaint, Plaintiffs describe their *Monell* claim in several paragraphs, stating that Defendant Taos County (through its Board of County Commissioners) operates and maintains the Taos County Detention Center, detoxification facilities, and, in part, Holy Cross Hospital in Taos, New Mexico. *See* Doc. 21, ¶¶ 271-273. Through these facilities, allege Plaintiffs, the County has "directly and indirectly through policy and custom or otherwise informed law enforcement that it is permissible to drop off intoxicated person[s] in their control and care at various unsafe locations such as gas stations, as in this case." *Id*. ¶ 273; *see also id*. ¶ 275. In their amended pleading, Plaintiffs also contend that the "the Defendants [including, presumably, Defendant Taos County] exercised unconstitutional policies, procedures, and customs for dealing with persons who were intoxicated and in their care, control, and custody and maintained an unconstitutional failure to train said employees, correction officers, staff and contractors on handling intoxicated persons in their care and control and custody." *Id*. ¶ 277. Plaintiffs also claim that,

> Defendant supervisors and Sheriff failed to provide adequate training to its officers regarding responding to calls involving such as this one and how to protect persons who are in their control and custody as well as ensuring that all officers understand the mandates of the law and the requirements set forth by the law in dealing with intoxicated persons in their custody and control.

*Id*. ¶ 293.

In their response to Defendant County's Motion to Dismiss, Plaintiffs describe their *Monell* claim a bit differently, stating that Defendant is liable to them because "Taos County maintained a custom, policy, and practice of NOT informing TCADC [Taos County Adult Detention Center], Holy Cross Hospital, Police Departments within the County, and others that intoxicated person [sic] can and should be held for detox under Detoxification Reform Act/Protective Custody Statutes." Doc. 38 at 9.  Plaintiffs also reiterate their failure to train theory, stating that "the County failed to train, supervise, or discipline its employees so as to prevent them from unlawfully depriving citizens of their constitutional rights. . . [A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of person with whom the [untrained employees] come into contact." *Id*. at 16.

And finally, at the Motions Hearing before this Court, Plaintiffs explained that their *Monell* claim is grounded in the County's custom and policy of not accepting intoxicated persons for detoxification, failing to give them a safe place to detoxify, and "creating, basically, a custom and policy  that is so embedded that it literally is the force of law that you cannot bring people to the jail unless they've been charged with a crime." Mot. Hr'g Tr. at 50:7-11.  Plaintiffs restated that their *Monell* claim also included the allegation that,

> Defendant supervisors and Sheriff failed to provide adequate training to its officers regarding responding to calls involving such as this one and how to protect persons who are in their control and custody as well as ensuring that all officers understand the mandates of the law and the requirements set forth by the law in dealing with intoxicated persons in their custody and control.

*Id*. at 52:7-17 (citing Doc. 21, ¶ 293).

### 2. The County's response to Plaintiffs' *Monell* claim.

The County contends that Plaintiffs' theories of liability under *Monell*  must be rejected and such claims dismissed for several reasons.  First, argues Defendant, Plaintiffs do "not allege a

constitutional violation by any individual county officers or county employees; thus a claim under *Monell* fails as a matter of law for this reason alone." Doc. 26 at 13. Second, according to Defendant County, "a governmental entity's discretionary decision whether to authorize, fund, build and staff a particular structure, program or project [i.e., a detoxification center] is not a 'policy' or 'custom' with the meaning of *Monell*. *Id*. at 13. According to Defendant, Plaintiffs cannot rely on a state statute, the New Mexico Detoxification Reform Act, to form the basis for their federal § 1983 *Monell* claim." *Id*. at 9-11.

### 3. Analysis

Regardless of whether Plaintiffs' *Monell* claim is centered on an alleged County policy or custom of "informing law enforcement that it is permissible to drop off intoxicated person[s] in their control and care at various unsafe locations such as gas stations," a policy or custom "of NOT informing TCADC, Holy Cross Hospital, Police Departments within the County, and others that intoxicated person [sic] can and should be held for detox under Detoxification Reform Ac/Protective Custody Statutes," a policy or custom "of not accepting intoxicated persons for detoxification [and] failing to give them a safe place to detoxify," or a policy or custom of not providing appropriate training and supervision to its officers or other employees regarding intoxicated persons who are in their control and custody, Plaintiffs have failed to state a viable *Monell* claim against the County for one obvious reason—they fail to allege any facts that would directly link any of these alleged policies or customs to the tragic death of Mr. Charley.

A valid *Monell* claim must articulate not only a policy or custom of a local governing body, but also at least some fact or series of facts that show that the challenged policy or custom was *directly linked* to the constitutional deprivation—in this case, the death of Mr. Charley—and was a moving force behind that injury. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d

9

760, 770 (10th Cir. 2013) (A plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L. Ed. 2d 626 (1997)); s*ee also Velarde v. Bd. of Cnty. Commissioners of Cnty. of Taos*, 756 F. Supp. 3d 1216, 1222 (D.N.M. 2024). Moreover, while *Monell* does not require that an individual defendant be held liable before it can find a governmental body liable, the language of §1983 "imposes liability on a government [only when], under color of some official policy, [it] 'causes' an *employee* to violate another's constitutional rights." *Monell*, 436 U.S. at 692 (emphasis added). In other words, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

Here, Plaintiffs fail to allege a valid *Monell* claim because they do not provide any factual allegations that would show any link, much less a "direct causal link," between the alleged County policies they describe and the death of Mr. Charley. *Bryson*, 627 F.3d at 788. For instance, even though Plaintiffs assert that the County has a policy or custom of informing law enforcement officers that it is permissible to drop off intoxicated persons in safe places, there is no allegation that anyone at the County so informed the Town of Taos police officer who drove Mr. Charley to the Speedway Gas Station. The plausibility of such an allegation, even if it was made, would be suspect given that the County does not control or supervise officers from other law enforcement agencies and there is no allegation that Mr. Charley was ever in the custody or control of County law enforcement officers such as the Taos County Sheriff's Department. It is undisputed that the police officers who interacted with Mr. Charley at his residence and who drove him to the gas station where he was dropped off were officers and employees of the Town of Taos Police Department, not officers or employees of the County of Taos or officers or employees of the

10

County of Taos Sheriff's Department. There is no allegation that the Town of Taos police transported or attempted to transport Mr. Charley to any facility owned or operated by the County, including the Taos County Detention Center or Holy Cross Hospital, and the driver of the motor vehicle that struck and killed Mr. Charley is not alleged to be an officer or employee of the County. Simply put, Plaintiffs have alleged no facts that indicate or even reasonably infer that any County employee or officer was involved in any of the events that ultimately led to or caused Mr. Charley's death.[5] The facts, as alleged by Plaintiffs, simply do not support the contention that there was an "underlying constitutional violation by any of [the County's] officers." *Hinton*, 997 F.2d at 782.[6]

Although Plaintiffs allege that their *Monell* claim is also based on the County's failure to train and supervise its officers on how to respond to calls involving intoxicated persons and how to protect such persons who are in their control and custody, they fail to tie these alleged inadequacies in training or supervision to anything that occurred in this case. *Id*. ¶ 293. As stated above, there is no allegation, for instance, that any officer or employee of the County was involved

---

[5] Plaintiffs do allege that Mr. Charley's death was investigated by Taos County Sheriff's Deputy Syliva Chacon, who was dispatched to the scene where Mr. Charley was struck and killed by an automobile. Doc. 21, ¶¶ 114-120, 136-139, 144.  Plaintiffs do not, however, allege any violation of rights or tortious acts by Deputy Chacon. *See id*., passim.

[6] Certainly, there have been cases where a local governmental body was found to be subject to *Monell* liability for failing to appropriately care for an intoxicated individual in its custody or control.  In *Garcia v. Salt Lake County*, 768 F.2d 303, 309-10 (10th Cir. 1985), for instance, the Tenth Circuit confirmed that a county could be liable under *Monell* where an intoxicated person who was arrested and taken to a County Jail was found dead of an overdose after county officials neglected to observe him.  And in *Kneipp v. Tedder*, 95 F.3d 1199, 1201-03, 1213-14 (3rd Cir. 1996), the Third Circuit  reversed a district court's dismissal of claims against a municipality and directed the district court to consider municipal liability against a city after its officers left an intoxicated person on the street, where she wandered off and suffered extreme hypothermia resulting in permanent brain damage. The key distinction between those cases and the present suit is that the municipalities in those cases were found liable based on the conduct of their own employees, while here there is no plausible allegation of unconstitutional conduct on the part of any of the County's employees or officers.

in any way in responding to the call involving Mr. Charley prior to his death and there is no dispute that Mr. Charley was never in the custody, control or care of officers or employees of the County. A negligent hiring, training or supervision claim is therefore not plausible under the facts alleged by Plaintiffs. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989) (holding that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.").

Because Plaintiffs have not alleged facts showing any causal link between the stated County policies or customs, the Court must dismiss Plaintiffs' *Monell* claim against Defendant Taos County.[7] This effectively dismisses the federal claims against the Taos County Board of County Commissioners brought under the second, third, fourth, eleventh and twelfth causes of action of Plaintiff's First Amended Complaint, all of which hinge on violations of decedent's substantive due process rights under the Fourteenth Amendment of the U.S. Constitution and are brought pursuant to 42 U.S.C. § 1983.[8]

---

[7] To the extent that Plaintiffs' *Monell* claim is based on an alleged custom or policy of the County to not abide by the alleged requirements or mandates of the New Mexico Detoxification Reform Act, N.M. STAT. ANN. §§ 43-2-1.1, et seq., the Court agrees with the County that such a claim would be without merit because §1983 *Monell* liability may only lie where there is a violation of a federal constitutional or federal statutory right. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 415, 117 S. Ct. 1382, 1394, 137 L. Ed. 2d 626 (1997) ("As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.").

[8] *See* Doc. 21 at 31 n.4 ("A cause of action for the deprivation of Charley's rights under the U.S. Constitution…is hereby brought under 42 U.S.C. § 1983"); *Id.* ¶¶ 208-09 (noting the second cause of action is brought under the Fourteenth Amendment of the U.S. Constitution); *Id.* at 32 n.5 (bringing third cause of action for violation of [substantive] due process rights pursuant to 42 U.S.C. § 1983); *Id.* at 33 (bringing a fourth cause of action for negligent hiring, training, supervision, and retention); *Id.* at 40-41 (bringing eleventh cause of action under *Monell* leading

**B. Plaintiffs' Claim Under the New Mexico Tort Claims Act Fails Because the County is Not a "Law Enforcement Officer" and the Allegations in Plaintiffs' Complaint are Not Connected to the Conduct of County Law Enforcement Officers.**

Plaintiffs also bring claims against Defendant County alleging that the County is liable under the New Mexico Tort Claims Act ("NMTCA") for the torts of assault, battery, and depravation of enumerated rights resulting in wrongful death. Doc. 21 at 28 (citing N.M. STAT. ANN. § 41-4-12). Plaintiffs allege that Taos County had a duty to provide detoxification and treatment services, which it did not provide, and as a result of this negligence, Mr. Charley died. Doc. 21 ¶¶ 203-205. Defendant County argues that the Taos County Board of County Commissioners does not constitute a "law enforcement officer" within the definition of the statute, and the Amended Complaint does not allege that a County law enforcement officer committed any tort. Doc. 26 at 15.

The NMTCA grants immunity from tort liability to state governmental entities and public employees acting within the scope of their duties unless waived by the New Mexico Religious Freedom Restoration Act or Sections 41-4-5 through 41-4-12 of the NMTCA. *See* N.M. STAT. ANN. §§ 41-4-2, 41-4-4. Section 41-4-12, under which Plaintiffs bring their claim against Taos County Board of County Commissioners, waives immunity for law enforcement officers for certain enumerated torts committed while acting within the scope of their duties:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States

---

to constitutional violation of substantive due process); *Id.* at 42 (bringing a twelfth cause of action based on § 1983 violation of substantive due process).

13

> or New Mexico when caused by *law enforcement officers* while acting within the scope of their duties.

N.M. STAT. ANN. § 41-4-12 (emphasis added). The statute defines a "law enforcement officer" in the following manner:

> '[L]aw enforcement officer' means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

N.M. STAT. ANN. § 41-4-3D.

Here, there is no question that the Taos County Board of County Commissioners is not a law enforcement officer because it clearly does not fit the statutory definition above. However, unlike a claim brought against a municipality under 42 U.S.C. §1983, a local governmental entity may be held liable under certain provisions of the NMTCA for the tortious acts of its employees if, during the commission of that tortious conduct, the employees were acting under the authority of their employer. *See Silva v. State*, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 477, 745 P.2d 380, 385 ("A governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived."). Through this legal theory, Plaintiffs argue that their NMTCA claim is valid and cognizable under the New Mexico Supreme Court's holding in *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶¶ 21-23, 121 N.M. 646, 652–53, 916 P.2d 1313, 1319–20. The Court disagrees.

In *Weinstein*, a rape victim and her parents filed a civil suit against the City of Santa Fe Police Department and two of its police officers, alleging negligence under the NMTCA. *Id*. at ¶ 4. In the suit, plaintiffs alleged that the sexual assault against the rape victim was perpetrated by an individual who had been previously arrested several times by Santa Fe police officers on

14

suspicion of rape but was subsequently released. The plaintiffs argued that the police department and the two police officers were negligent in failing to forward to the district attorney's office the documentation necessary to arraign the suspected rapist and in not formulating and implementing procedures to prevent the release of suspects due to mistakes. *Id*. According to the plaintiffs, the police department and both officers had a duty to ensure that the proper paperwork was forwarded to the district attorney's office, and the defendants' failures breached that duty.

The state district court granted the defendants' motion to dismiss, finding that the police did not have a statutory duty to forward paperwork to the district attorney's office and that, in the absent of any such duty, the NMTCA provided the police with immunity from the suit. *Id*. On appellate review, the Supreme Court of New Mexico reversed the district court's determination, holding that, under Section 41-4-12, a law enforcement officer may be liable for the acts of a third party where the officer owes a legally cognizable duty to the victim and then breaches that duty. *Id*. at ¶18 (citing *Shear v. Board of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984)). The Supreme Court explained that, in the case before it, the victim had suffered a "battery," which was one of the common law torts enumerated in the NMTCA for which immunity could be waived for law enforcement officers, and that plaintiffs had sufficiently pled a claim under that statute by alleging that the officers had failed to exercise the care of reasonably prudent and qualified officers in an activity undertaken for the safety of others. *Id*. at ¶ 23. The Court also held that the victim's parents, who had witnessed the victim's rape, had stated a claim against the police officers under the NMTCA because the officers had a statutory duty to take the steps necessary to prosecute suspected criminals, such as filing complaints against the suspects, in order to protect the public. *Id*. at ¶¶ 34, 38, 43.

15

In this case, the Court determines that *Weinstein* has no application to the facts or claims alleged in Plaintiffs' First Amended Complaint. It is true that in *Weinstein*, the Supreme Court of New Mexico determined that law enforcement officers and their employing agencies could be held liable under certain circumstances for one of more of the enumerated torts in Section 41-4-12 of the NMTCA, even where a third party committed the tortious act. *See id*. at ¶ 7. However, in this case there is no allegation that County law enforcement officers were involved in any of the events described in Plaintiffs' pleadings leading up to Mr. Charley's death such that they or the County would owe a duty of care to the decedent.

Plaintiffs nevertheless allege that the County is liable under the NMTCA waiver of immunity for law enforcement officers because "Taos County had a duty to provide services where members of its community could be taken for a detoxification hold and treatment" and the County "did not provide any services or locations where law enforcement could take persons who were intoxicated, and in their control and custody to be held for a detox hold and treatment. Doc. 21 ¶¶ 203, 204. There are several reasons why Plaintiffs' allegations related to the County's duties do not plead a plausible claim under Section 41-4-12 of the NMTCA. First, as previously noted, there are no facts alleged which support the contention that Mr. Charley was ever in the "control and custody" of the County or any of its employees or officers, so no duty on the part of the County to provide services to him could have arisen from such custody. Second, the duty Plaintiffs argue the County and/or its officers and employees violated is apparently based on the New Mexico Detoxification Reform Act, which provides, in relevant part, that

> [a]n intoxicated or incapacitated person *may* be committed to a treatment facility at the request of an authorized person for protective custody, if the authorized person has probable cause to believe that the person to be committed:
>
> (1) is disorderly in a public place;

16

> (2) is unable to care for the person's own safety;
>
> (3) has threatened, attempted or inflicted physical harm on himself or another;
>
> (4) has threatened, attempted or inflicted damage to the property of another;
>
> (5) is likely to inflict serious physical harm on himself;
>
> (6) is likely to inflict serious physical harm on another; or
>
> (7) is incapacitated by alcohol or drugs.

N.M. STAT. ANN. §43-2-8(A) (emphasis added). To the extent Plaintiffs rely on this state statute to argue that the County and/or any of its officers had a statutory obligation or duty to ensure Mr. Charley was transported to the Taos County Detention Center or Holy Cross Hospital, the Court again must disagree. In *Milliron v. Cnty. of San Juan*, 2016-NMCA-096, ¶ 25, 384 P.3d 1089, 1097, the New Mexico Court of Appeals examined the language of the Detoxication Reform Act and concluded that it did not impose a duty on the part of law enforcement officers or their employers to detain and transport intoxicated persons to safety. The Court of Appeals instead determined that the "Legislature's use of the permissive 'may' rather than the mandatory 'shall' indicates the discretionary nature of a law enforcement officer's authority under Section 43-2-8(A)." *Id*. (citing *Cerrillos Gravel Prods., Inc. v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2004–NMCA–096, ¶ 10, 136 N.M. 247, 96 P.3d 1167) ("The word 'may' is permissive, and is not the equivalent of 'shall,' which is mandatory."). Thus, there is no statutory duty or obligation under the Detoxification Reform Act which could form the basis for a *Weinstein*-type claim against the County.

Plaintiffs' negligent training, supervision and hiring claim brought under the NMTCA also fails at the pleading stage. Again, while such claims are cognizable under the NMTCA, here such

17

claims are not plausible given that Plaintiffs do not allege any facts that show involvement by any County employee or officer which could be attributed to negligent training or supervision. *See, e.g., Ortiz v. New Mexico State Police*, 1991-NMCA-031, ¶ 4, 112 N.M. 249, 251, 814 P.2d 117, 119 (holding that "when subordinate officers have committed one of certain specified torts, the Tort Claims Act does not provide immunity to supervisory law enforcement officers whose negligent training or supervision of the subordinates was a proximate cause of the tort").

Because the allegations are not directed at any action by law enforcement officers from the County, Plaintiff's claim against the County brought under Section 41-4-12 of the New Mexico Tort Claims Act necessarily fails.

**C. Plaintiffs Have Not Sufficiently Pled a Violation of the New Mexico Civil Rights Act.**

Next, the Court considers whether Plaintiffs have sufficiently pled a plausible claim against Defendant County for violation of the New Mexico Civil Rights Act ("NMCRA") N.M. STAT. ANN. §§ 41-4A-1 to -13 (2021). In footnotes to their second and third causes of action of their First Amended Complaint, Plaintiffs allege a "deprivation of [Mr.] Charley's rights under the New Mexico Constitution . . . brought under the New Mexico Civil Rights Act." Doc. 21 at 31 n.4, 32 n.5. As stated by Plaintiffs, the County deprived Mr. Charley of his right to life and liberty under Article II, §§ 4 and 18 of the New Mexico Constitution and violated his due process rights by "creating the danger that led to the end of his life." *Id*. ¶¶ 209, 213. At the Motions Hearing before the Court, Plaintiffs further explained that their NMCRA claim also included an allegation that the County was liable under the statute for the negligent hiring, training, supervision and retention of Taos County Manager Brent Jaramillo. *See* Mot. Hr'g Tr. at 47-48.

Defendant County summarily moves to the dismiss Plaintiffs' claims under the NMCRA, arguing that "Defendant has discussed why claims under 42 U.S.C. § 1983 do not lie as a matter of law. Regarding the state NMCRA claims, the legal standards under the New Mexico

Constitution and the NMCRA are the same as they are under the United States Constitution and § 1983." Doc. 26 at 16.

The NMCRA "prohibits state and local government officials from subjecting others to a deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico." *Underhill v. Kendall*, No. 2:24-cv-00245, 2025 WL 776949, at *5 (D.N.M. Mar. 11, 2025) (internal quotation omitted). The Act further provides that any person who claims to have suffered such a deprivation may bring an action to establish liability and recover damages in any New Mexico district court. *See* N.M. STAT. ANN. § 41-4A-3(B). Plaintiffs are correct in pointing out that, "Claims brought pursuant to the New Mexico Civil Rights Act shall be brought exclusively against a public body." Doc. 38 at 11 (citing N.M. STAT. ANN. § 41-4A-3(C)). Plaintiffs also accurately contend that, "Any public body named in an action filed pursuant to the New Mexico Civil Rights Act shall be held liable for conduct of individuals acting on behalf of, under color of, or within the course and scope of the authority of the public body." *Id*.

The problem with Plaintiffs' pleading, however, is that it does not plausibly allege any facts indicating that a County officer or employee engaged in any action or omission that led to a deprivation of Mr. Charley's state constitutional rights such that the County would be liable to Plaintiffs. Again, as to the allegations related to Mr. Charley's interaction with law enforcement officers, those officers were not Taos County officers but instead Town of Taos police officers, and there are no stated facts showing that they were acting on behalf of, under color of, or within the course and scope of the authority of Taos County. As to the claim that the County is liable under the NMCRA for the negligent hiring, training, supervision and retention of Taos County Manager Brent Jaramillo, Plaintiffs set forth no facts stating what conduct Mr. Jaramillo engaged in which would impose such liability on the County.

The Court will thus dismiss Plaintiffs' second, third and fourth cause of action to the extent they are brought pursuant to the NMCRA.

**D. Plaintiffs' Loss of Consortium Claims Against the County Must be Dismissed.**

The Court will also dismiss Plaintiffs' loss of consortium claims against Defendant County brought in their sixth and seventh causes of action. A claim for loss of consortium damages is a derivative claim, which means that it is contingent upon the injured person's entitlement to general damages. *See Archer v. Roadrunner Trucking Inc.*, 1997-NMSC-003, ¶11, 122 N.M. 703, 708, 930 P.2d 1155, 1160; *see also Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 9, 397 P.3d 1279, 1282 ("Loss of consortium damages are derivative in nature because they arise from a physical injury upon another person."). Because such claims are derivative, and here Plaintiffs have not pled plausible claims against the County which would make it liable for the injury to Mr. Charley as alleged by Plaintiffs, there is no viable claim against the County for loss of consortium.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendant Taos County Board of County Commissioner's Motion to Dismiss (Doc. 26) with prejudice.[9]

**IT IS SO ORDERED.**

_____
HONORABLE DAVID H. URIAS
UNITED STATES DISTRICT JUDGE

---

[9] The claims against Taos County are dismissed with prejudice because, absent additional facts showing actionable conduct on the part of the County, allowing Plaintiffs to amend their pleadings at this time would be futile. *See Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) ("[D]ismissal with prejudice is appropriate where a complaint fails to a state a claim under Rule 12(b)(6) and granting leave to amend would be futile"). However, as proposed by Defendant Taos County at the Motions Hearing, the Court, upon motion, will consider allowing Plaintiffs to amend their pleadings to reinstate claims against the County if evidence is discovered that would make such claims viable. *See* Mot. Hr'g Tr. at 66; 73-74.