**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DENNIS MURPHY, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF
NATHAN KEE CHARLEY, deceased; and
REBECCA SUAZO,

      Plaintiffs,

v.                                                                                            No. 1:24-cv-00963-DHU-LF

TAOS COUNTY BOARD OF COUNTY
COMMISSIONERS, BRENT JARAMILLO, TAOS
COUNTY MANAGER, TOWN OF TAOS, CHIEF OF
POLICE JOHN WENTZ, in his individual and official
capacity, OFFICER TAYLOR GWINN, in her individual
and official capacity as a law enforcement officer and in
her individual and official capacity as an investigator for
the NEW MEXICO OFFICE OF THE MEDICAL
INVESTIGATOR, DEFENDANT OFFICE OF THE
MEDICAL INVESTIGATOR, OFFICER BRIAN
GARCIA, in his individual and official capacity, and
OFFICER ANTHONY MARTINEZ, in his individual and
official capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This lawsuit was brought by Plaintiffs Dennis Murphy, as personal representative of the wrongful death claim of Nathan Charley ("Mr. Charley") and Rebecca Suazo ("Ms. Suazo"), the domestic partner of Mr. Charley, after Mr. Charley was struck and killed by a vehicle in the El Prado area of Taos, New Mexico, in August 2023. In their First Amended Complaint, Plaintiffs bring claims against several defendants, including Defendant Regents of the University of New Mexico ("Regents"), a state entity in charge of the Office of the Medical Investigator ("OMI"). Doc. 21 ¶¶ 14-15. Defendant Regents filed the instant Motion to Dismiss for Failure to State a

1

Claim ("Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking the dismissal of all claims against it. Doc. 54.

Having considered the pleadings, the record before the Court, and the applicable law, the Court will **GRANT IN PART** and **DENY IN PART** Defendant Regents' Motion.

**I.**
**BACKGROUND[1]**

On the evening of August 25, 2023, Mr. Charley's partner, Ms. Suazo, called Taos Central Dispatch to report that Mr. Charley was intoxicated and that she needed assistance to remove him from their home. Doc. 21 ¶ 22. A Town of Taos police officer arrived at the residence, followed by two more Town of Taos police officers, including Town of Taos police officer Taylor Gwinn ("Gwinn"). *Id.* ¶¶ 25, 38. The officers spoke to Mr. Charley and Ms. Suazo about the domestic dispute and discussed with them whether Mr. Charley could find a place to sleep that evening. *Id.* ¶¶ 34-35, 46-48, 51-56, 59-62. During these conversations, Defendant Gwinn commented on Mr. Charley's level of intoxication, describing him as "shitfaced drunk." *Id.* ¶¶ 59-62. The officers eventually determined that Mr. Charley had no friends or family in the area, and that the family did not have funds to pay for a hotel for the night. *Id.* ¶¶ 34-35, 51-54.

The officers then informed Ms. Suazo that they would take Mr. Charley for a ride, and while they did not know where, they informed Ms. Suazo that they would keep Mr. Charley out of the residence for the night. *Id.* ¶ 87. The officers patted Mr. Charley down after instructing him to place his hands on his head. *Id.* ¶ 93. At this point, the officers knew that Mr. Charley had no wallet, money, phone, food, or water in his possession. *Id.* ¶ 97. Mr. Charley also informed the

---

[1] For this factual background, the Court accepts all well-pleaded factual allegations in Plaintiffs' First Amended Complaint as true and views them in the light most favorable to Plaintiffs. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).

officers he had glaucoma, struggling to pronounce the word. *Id.* ¶ 98. Defendant Gwinn once again commented on Mr. Charley's level of intoxication, and repeated that he was "shitfaced." *Id.* ¶ 99. One of the other officers then placed Mr. Charley in a patrol unit. *Id.* ¶ 100. The officer informed Mr. Charley that, should he return to the residence that evening, there would be a good chance that he would be arrested. *Id.* ¶ 101. The officer then drove Mr. Charley to a Speedway gas station in El Prado, where he wandered away from the parking lot and into the night. *Id.* ¶¶ 107-10. Mr. Charley was eventually struck by a motorist and killed. *Id.* ¶¶ 112-13. The motorist called Taos Central Dispatch. *Id.* ¶ 111.

Town of Taos officers responded to the call, including Defendant Gwinn, who was the first to arrive at the scene. *Id.* ¶ 126. Defendant Gwinn interviewed the motorist. *Id.* ¶¶ 126-27. According to Defendant Gwinn, the motorist stated that "a large naked man jumped out in front of him." *Id.* ¶ 127. The videotape recording from an officer's body worn camera shows that the motorist never made this statement to anyone on scene. *Id.* ¶ 143. Defendant Gwinn also released another vehicle from the scene without obtaining information from its occupants. *Id.* ¶ 126.

Taos County Sheriff officers also responded to the call. *Id.* ¶¶ 114-15. Defendant Gwinn reported to a Taos County Sheriff's Deputy that the decedent was the male that Town of Taos officers dropped off at the Speedway gas station earlier that night. *Id.* ¶ 117. Another Town of Taos officer walked up to the Sheriff's Deputy and identified the decedent as Mr. Charley. *Id.* ¶¶ 121-22. At some time during this interaction, the officers at the scene requested that the OMI be contacted. *Id.* ¶ 123.

Defendant Gwinn, who, in addition to being a Taos police officer was also a Field Deputy Medical Investigator with the OMI, contacted the OMI Field Deputy Medical Investigator on call that evening and asked him if he would like her to handle the call due to him being an hour away

3

from the scene. *Id.* ¶ 124. He agreed. *Id.* Defendant Gwinn then left the scene, stating that she would be back. *Id.* ¶ 129.

During Defendant Gwinn's absence, the Sheriff's Deputy continued her investigation. *Id.* ¶ 130. In doing so, the Sheriff's Deputy learned that Mr. Charley was fully clothed when he was struck by the motorist and that the impact had caused his clothing to come off. *Id.* ¶ 130. She was also informed that Defendant Gwinn would be conducting the OMI investigation. *Id.* ¶ 139.

Shortly thereafter, Defendant Gwinn returned to the scene. *Id.* ¶ 140. Defendant Gwinn, who was no longer wearing her Town of Taos officer uniform, then began her OMI investigation. *Id.* A few minutes into the investigation, Defendant Gwinn stated that Mr. Charley jumped in front of the vehicle and reported this finding in her OMI Field Investigator Report ("OMI Field Report"). *Id.* ¶ 141.[2] In her OMI Field Report, Defendant Gwinn also noted that Mr. Charley "did not appear to be intoxicated enough to require medical attention," which was inconsistent with her prior statements describing Mr. Charley's state of intoxication. *Id.* ¶ 145.

Following the OMI investigation and OMI Field Report, an OMI physician issued a Findings Report ("Findings Report"). In her Findings Report, the OMI physician relied on reports, including Defendant Gwinn's OMI Field Report, and concluded that "given the current investigative reports, it [was] unclear whether Mr. Charley intended to end his life" and that, therefore, "the manner of death [was] best classified as undetermined." *Id.* ¶¶ 146-48.

Plaintiffs now bring several claims against Defendant Regents, including state law tort and federal constitutional claims[3], all which Defendant Regents has now moved to dismiss. As to the

---

[2] The First Amended Complaint does not explain to whom Defendant Gwinn made this statement. *See id*.

[3] In their First Amended Complaint, Plaintiffs state several causes of action against several defendants. It is far from clear in the First Amended Complaint what claims are brought

state law tort claims, Plaintiffs allege that Defendant Regents is liable for several causes of action for which immunity has been waived under the New Mexico Tort Claims Act ("NMTCA"), including defamation of character, N.M. STAT. ANN. § 41-4-12 (2020)[4]; negligent operation of equipment, N.M. STAT. ANN. § 41-4-6 (2007)[5]; and negligent hiring, training, supervision, and retention.[6] As to the federal constitutional claim, Plaintiffs allege that Defendant Regents is liable for violating Mr. Charley's due process rights.[7] Plaintiffs also allege that Defendant Regents is liable to them for the loss of consortium suffered by Ms. Suazo and Mr. Charley's two children.[8]

## II.
## LEGAL STANDARDS

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim

---

specifically against Defendant Regents. In their response to Defendant Regents' Motion to Dismiss, Plaintiffs clarify that only the First, Fourth, Fifth, Sixth, Seventh, Eighth and Tenth Causes of Action are being brought against Defendant Regents. Doc. 61 at 24 ¶ G. The Court therefore only address those causes of action in this Memorandum Opinion and Order.

[4] *See* Doc. 21 ¶¶ 187-206, First Cause of Action "Assault, Battery, and Deprivation of Enumerated Rights Resulting in Wrongful Death – NMSA 1978 § 41-4-12 (All Named Defendants)"; ¶¶ 265-69 Tenth Cause of Action "Defamation (Defendant Gwinn)." In their response to Defendant Regents' Motion to Dismiss, Plaintiff's clarify that their claim against Defendant Regents under Section 41-4-12 of the NMTCA is for defamation. *See* Doc. 61 at 7.

[5] *See id.* ¶¶ 230-37, Fifth Cause of Action "NMSA 1978, § 41-4-6 – OMI Deputy Investigator Conduct (Defendant Gwinn and NM OMI)."

[6] *See id.* ¶¶ 220-29, Fourth Cause of Action "Negligent Hiring, Training, Supervision, and Retention (Defendants [O]ther than [N]amed Officers)."

[7] *See id.* ¶¶ 250-54, Eighth Cause of Action "Due Process Violation – OMI Deputy Field Investigator Conduct (Defendant Gwinn in her Individual and Official Capacities)."

[8] *See id.* ¶¶ 238-43, Sixth Cause of Action "Loss of Consortium for [T]wo [M]inor [C]hildren John Does 4-5 (All Defendants)"; ¶¶ 244-49, Seventh Cause of Action "Loss of Consortium for Rebecca Suazo (All Defendants)."

under Rule (12)(b)(6), a complaint must "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). However, while the Court must accept all well-pled factual allegations in the complaint as true, it need not accept conclusory allegations or statements of law and may not consider matters outside of the pleading. *See Twombly*, 550 U.S. at 555 (2007); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

When a court dismisses a complaint under Rule 12(b)(6), it generally does so without prejudice. *See* 5B C. Wright & A. Miller, Federal Practice & Procedure § 1357 (4th ed. 2024). Nevertheless, in the Tenth Circuit, the court may dismiss the complaint with prejudice "where [the] complaint fails to a state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) (internal quotation marks, citation, and emphasis omitted).

### III.
### DISCUSSION

**A. Plaintiffs Have Failed to State a Plausible Claim Against Defendant Regents for Defamation of Character Under Section 41-4-12 of the NMTCA**

Defendant Regents first moves to dismiss Plaintiffs' claims brought under Section 41-4-12 of the NMTCA. Doc. 54 at 3-5. Defendant argues that any claim brought against it under Section

6

41-4-12 cannot stand because the waiver of immunity found therein only waives immunity for law enforcement officers and neither Defendant Regents nor its employee, Defendant Gwinn, when acting in her capacity as an OMI Field Investigator, are law enforcement officers. *Id.* at 4-5; Doc. 64 at 3, 5.

Plaintiffs respond and claim that Defendant Gwinn and Defendant Regents, through the doctrine of *respondeat superior*, are liable under the NMTCA for defamation of character, which is one of the enumerated torts for which immunity is waived under Section 4-4-12 for law enforcement officers acting within the scope of their duties. Doc. 21 ¶¶ 191, 265-69; Doc. 61 at 7. Plaintiffs allege that Defendant Regents' employee, Defendant Gwinn, made false statements during her OMI investigation and in her OMI Field Report. Doc. 21 ¶¶ 266-67; Doc. 61 at 7. More specifically, Plaintiffs allege that Defendant Gwinn stated in her OMI Field Report that the motorist who struck Mr. Charley told her that "a large naked man jumped out in front of him," which was not true, as evidenced by the recording from a body worn camera. Doc. 21 ¶¶ 127, 143. Plaintiffs also contend that Defendant Gwinn stated in her OMI Field Report that "the decedent did not appear to be intoxicated enough to require medical attention," which was inconsistent with the statements she made when she first encountered Mr. Charley indicating that she believed that he was highly intoxicated. *Id.* ¶ 145.

As alleged by Plaintiffs, "Defendant Gwinn used her position as an OMI [F]ield [Deputy Medical] [I]nvestigator to distort the investigation in order to avoid any repercussions for herself and fellow officers related to the acts and omissions from their direct contact with [Mr. Charley] earlier in the evening." *Id*. ¶ 150. As further alleged by Plaintiffs, Defendant Gwinn accomplished this by creating "fabrications in her official reports" which caused Mr. Charley's death to be ruled "undetermined" and prevented further investigation. *Id*. ¶ 149.

The NMTCA grants state governmental entities and public employees acting within the scope of their duties immunity from tort liability unless that immunity is expressly waived by the Act. *See* N.M. STAT. ANN. § 41-4-4 (2001) ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12."); and N.M. STAT. ANN. § 41-4-17 (1982) ("The Tort Claims Act shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act."). Section 41-4-12, under which Plaintiffs bring their first claim against Defendant Regents, "sets out the applicable waiver of immunity for the acts or omissions of law enforcement officers." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 6, 121 N.M. 646, 916 P.2d 1313. That provision of the NMTCA states:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico ***when caused by law enforcement officers while acting within the scope of their duties***. For purposes of this section, "law enforcement officer" means a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes.

§ 41-4-12 (emphasis added).

Thus, to state a claim under Section 41-4-12 of the NMTCA, "a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that

8

the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *See Weinstein*, 1996-NMSC-021, ¶ 7. A law enforcement officer is defined in the NMTCA as:

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a government entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

N.M. STAT. ANN. § 41-4-3 (2015).

Here, Plaintiffs do not claim that Defendant Regents is a law enforcement officer. *See* Doc. 21 ¶¶ 187-206. Indeed, Defendant Regents clearly does not fit the statutory definition of a law enforcement officer because it is neither a full-time salaried public employee of a governmental entity nor a certified part-time salaried police officer employed by a government entity. *See Dunn v. McFeeley*, 1999-NMCA-084, ¶ 23, 127 N.M. 513, 984 P.2d 760 (observing that the "Agency Defendants" in that case, including the New Mexico Office of the Medical Investigator, did "not come within the definition of 'law enforcement officer' because an agency could not be a 'full-time salaried public employee'"). There can thus be no valid direct claim against Defendant Regents under this waiver provision of the NMTCA.

However, a governmental entity may be held liable under the NMTCA for the tortious acts of its employees, if, during the commission of that tortious conduct, the employees were acting under the authority of their employer. *See Silva v. State*, 1987-NMSC-107, ¶ 15, 106 N.M. 472, 754 P.2d 380 ("A governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived."). Plaintiffs argue that Defendant Regents is liable under Section 41-2-12 of the NMTCA for defamation of character, one of the enumerated torts for which immunity may be waived by law enforcement officers, because its

9

employee, Defendant Gwinn, made false statements during her OMI investigation and in her OMI Field Report. Doc. 21 ¶¶ 266-67; Doc. 61 at 7.

The glaring problem with Plaintiffs claim is that, in her capacity as an OMI investigator, Defendant Gwinn is not a law enforcement officer. To determine whether an employee is a law enforcement officer, the Court looks at the employee's principal duties. *See Weinstein*, 1996-NMSC-021, ¶ 8; *Anchondo v. Corrections Dep't*, 1983-NMSC-051, ¶ 10, 100 N.M. 108, 666 P.2d 1255. Specifically, the Court looks at whether the employee's principal duties include holding persons in custody, making arrests, or maintaining public order. *See* § 41-4-3. In *Dunn*, the New Mexico Court of Appeals held that a medical investigator was not a law enforcement officer. 1999-NMCA-084, ¶ 24. In reaching its decision, the Court expressly noted that the plaintiff in that case had not alleged "in the complaint or argue[d] at the motion hearings that [the medical investigator in the case held] persons in custody or [made] arrests for crimes." *Id.* The plaintiff's complaint had also not alleged "any duties of [the medical investigator in that case] that could be construed as maintaining public order." *Id.*

In this case, Plaintiffs insist that Defendant Gwinn is an OMI Field Deputy Medical Investigator *and* a Town of Taos police officer, and therefore the law enforcement waiver provision of the NMTCA applies. Doc. 21 ¶¶ 18-19. The facts alleged by Plaintiffs, however, distinguish between Defendant Gwinn's role as a Town of Taos police officer and her role as an OMI Field Deputy Medical Investigator. According to both Plaintiffs' Amended Complaint and their response to Defendant's motion to dismiss, Defendant Gwinn arrived at the scene of Mr. Charley's accident in her capacity as a Town of Taos police officer and initially was not conducting an OMI investigation. *Id.* ¶ 126. Defendant Gwinn then contacted the OMI Field Deputy Medical Investigator on call that evening, who agreed to her conducting the OMI investigation. *Id.* ¶ 124.

10

She then left the scene and returned sometime later out of her Town of Taos police uniform and only then began her OMI investigation and prepared her OMI Field Report. *Id.* ¶¶ 129, 140. Plaintiffs' Complaint does not indicate that, at that point, Defendant Gwinn, as an OMI Field Deputy Medical Investigator, took any actions consistent with her duties as a law enforcement officer during the time she prepared her Field Report. Nor do Plaintiffs allege that, in her role as an OMI Field Deputy Medical Investigator, Defendant Gwinn's principal duties included holding persons in custody, maintaining public order, or making criminal arrests. Plaintiffs, therefore, have failed to plead facts to show that  Defendant Gwinn, in her capacity as an OMI Field Deputy Medical Investigator, meets the definition of a law enforcement officer.

Recognizing the issue with their Section 41-4-12 claim against Defendant Regents, Plaintiffs argue that Defendant Gwinn was working in a hybrid capacity during her investigation, i.e., as both a law enforcement officer and as an OMI Field Deputy Medical Investigator. Doc. 61 at 8. The Court finds this argument unavailing because even if the Court were to accept this theory, Plaintiffs have still failed to state a plausible claim against Defendant Regents under Section 41-4-12. This is so because Defendant Regents employed Defendant Gwinn only as an OMI Field Deputy Medical Investigator, not a law enforcement officer. It was the Town of Taos who employed Gwinn as a law enforcement officer and so, to the extent immunity could be waived for her actions in that capacity, only the Town of Taos could be vicariously liable for her allegedly unlawful actions because such immunity is only waived when a public employee is "acting within the scope of [her] duties" as a police officer.[9] § 41-4-12.

---

[9] The Court makes no finding of liability on the part of the Town of Taos but only points out that it was the Town that employed Defendant Gwinn as a law enforcement officer.

Accordingly, Plaintiffs have failed to state a plausible claim against Defendant Regents under Section 41-4-12 waiver of immunity for law enforcement officers. The Court, therefore, dismisses the claim with prejudice.[10]

**B. Plaintiffs Have Failed to Plead a Plausible Claim Against Defendant Regents for Negligent Hiring, Training, Retention, and Supervision of OMI Field Deputy Medical Investigator Gwinn**

Defendant Regents also moves to dismiss Plaintiffs' claim against it for negligent hiring, training, supervision, and retention. Doc. 54 at 7; Doc. 21 ¶¶ 220-229. According to Defendant, Plaintiffs failed to sufficiently plead this claim because there is only a passing reference to the Office of the Medical Investigator in Plaintiffs' assertion of this cause of action which alleges there was "[i]nadequate management, training, and enforcement of policies regarding responding to and investigating calls as an OMI investigator." Doc. 21, ¶ 222(d); Doc. 54 at 7. This passing reference, Defendant Regents contends is not only insufficient to state a plausible claim against them, but also fails to adequately state that these alleged inadequacies led to the death of Mr. Charley and, therefore, lacks any nexus to the harm alleged in the First Amended Complaint. Doc. 54 at 7.

Plaintiffs respond that their Amended Complaint sufficiently pleads a cause of action for the negligent hiring, training, supervision and retention of OMI Field Investigator Gwinn. Doc. 61 at 16. Plaintiffs point out that their Amended Complaint is replete with allegations concerning Defendant Gwinn's unlawful conduct, including allegations that "she offered to conduct the OMI investigation of Mr. Charley's death despite the fact that she should have immediately known this action would result in a direct conflict of interest"; that she "included several falsehoods in her OMI report to make it appear that Mr. Charley was suicidal so that she and her fellow Taos Police

---

[10] The Court dismisses this claim with prejudice because allowing it to be amended would be futile, as under no set of circumstances could Defendant Regents be found to employ Defendant Gwinn as a law enforcement officer. *See Seale*, 32 F.4th at 1027.

Department Officers would not be subject to discipline for their acts and omissions earlier in the evening" of his death; and that she "egregiously reported several [other] falsehoods [in her OMI Field Report including] that [the motorist who struck the Mr. Charley with his vehicle] said Mr. Charley jumped in front of [his] vehicle without clothing despite this never happening" and falsely stated "that Mr. Charley did not appear intoxicated enough to require medical attention despite earlier in the evening describing Mr. Charley as 'shitfaced' [after] she witnessed [Mr. Charley] stumble off the sidewalk while trying to walk to [the] police unit." *Id.* at 16-17; Doc. 21 ¶¶ 124-25, 141-43, 145, 150.

The Court acknowledges that, in their First Amended Complaint, Plaintiffs allege several facts, including those above, indicating that Defendant Gwinn provided false statements in her OMI Field Report. Plaintiffs also plead that "Defendant Gwinn used her position as an OMI field investigator to distort the investigation in order to avoid any repercussions for herself and fellow officers related to the acts and omissions from their direct contact with Nathan earlier in the evening." Doc. 21 ¶ 150. But what is absent from Plaintiffs' pleading are any factual allegations that tie any of Defendant Gwinn's alleged misconduct to the negligent hiring, supervision, training, or retention of Defendant Gwinn by Defendant Regents. Perhaps more importantly, Plaintiffs fail to identify, either in their Amended Complaint or in their response to Defendant's Motion, the provision of the NMTCA that provides a waiver of the immunity afforded to public entities and employees for such negligence.[11] It is well-established that a plaintiff may not sue a New Mexico

---

[11] The New Mexico Court of Appeals has held that a negligent supervision and training claim may be brought under the NMTCA against supervisory law enforcement officers and entities. *See Ortiz v. N.M. State Police*, 1991-NMCA-031, ¶ 4, 112 N.M. 249, 251, 814 P.2d 117. However, the holding in *Ortiz* was specific to the law enforcement waiver of immunity found in Section 41-4-12 of the NMTCA and, as discussed above, here the law enforcement waiver in that section does not apply to Defendant Regents.

governmental entity or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for government entities and public employees. *See Begay v. State*, 1985-NMCA-117, ¶ 10, 104 N.M. 483, 723 P.2d 252, *rev'd on other grounds by Smialek v. Begay*, 1986-NMCA-049, 104 N.M. 375, 721 P.2d 1306. Presenting no factual allegations in the Amended Complaint to support a claim at this time for negligent hiring, supervision, training or retention, and Plaintiff having not identified how such a claim could be brought against Defendant Regents under the NMTCA, the Court will dismiss the claim without prejudice.

### C. Defendant Regents Provides No Legally Sufficient Basis for the Dismissal of Plaintiffs Claim for Negligent Operation of Equipment Under Section 41-4-6 of the NMTCA

Defendant Regents next requests that the Court dismiss Plaintiffs' claim brought against it pursuant to the waiver of immunity found in Section 41-4-6 of the NMTCA. Doc. 54 at 7-8; Doc. 21 ¶¶ 230-37. Through this claim, Plaintiffs allege that Defendant Gwinn used "various equipment of her job as an OMI Deputy Field [Medical] Investigator to carry out the tortuous conduct" set forth in the Amended Complaint. *Id.* ¶¶ 232. More specifically, Plaintiffs explain that "Defendant Gwinn used the various equipment from her job like her cell phone and her investigative policies, procedures and tools as OMI Deputy Field Medical Investigator to carry out the tortious conduct" alleged in the Amended Complaint. Doc. 61 at 14. That allegedly tortious conduct of Defendant Gwinn included the use of her cell phone to communicate with the OMI Field Deputy Medical Investigator on call on the night of Mr. Charley's death to ask him if he wanted her to conduct the OMI investigation. Doc. 21 ¶ 124. These actions, Plaintiffs allege, were taken by Defendant Gwinn for the purpose of taking over the OMI investigation to shield herself and fellow Town of Taos officers from any liability for the actions they took, or failed to take, during their interaction with

the Mr. Charley prior to his death. Doc. 21 ¶ 150. Under these alleged facts, Defendant Regents could be found liable for the torts committed by Defendant Gwinn if, during the commission of those torts, she was acting under the authority of the Regents as an employee of the OMI. *See Silva*, 1987-NMSC-107, ¶ 15.

Defendant Regents challenge the validity of Plaintiffs' claim, arguing that there is no waiver of sovereign immunity for the conduct alleged by Plaintiffs. Doc. 54 at 8. Citing to the New Mexico Supreme Court decision in *Castillo v. County of Santa Fe*, 1988-NMSC-037, ¶ 7,107 N.M. 203, 755 P.2d 48, Defendant argues that, through its enactment of Section 41-4-6, the "legislature intended to ensure the safety of the general public by imposing upon public employees a duty to exercise reasonable care in maintaining *premises* owned and operated by governmental entities." *Id*. (emphasis added). According to Defendant, Plaintiffs' claims do not pertain to the alleged negligence in the operation or maintenance of a building or premises and therefore does not fall into the ambit of Section 41-4-6. *Id*. Defendant also avers that the waiver found in Section 41-4-6 cannot apply to Plaintiffs' claim because that waiver only applies to instances where the damages sought are those "resulting from bodily injury, wrongful death, or property damage," none of which are alleged by Plaintiffs in their First Amended Complaint. *Id*. at 7-8.

Section 41-4-6 of the NMTCA waives immunity for claims of negligence involving the government's operation or maintenance of any building, public park, machinery, equipment or furnishings. In relevant part, the provision states:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, *equipment* or furnishings.

§ 41-4-6(A) (emphasis added).

The Court disagrees with Defendant Regents' reading of the scope of Section 41-4-6(A). The plain language of that provision demonstrates that the waiver of immunity for the negligence of public employees is not restricted only to the operation or maintenance of a building (or premises), as argued by Defendant. Instead, the statute plainly provides that the waiver recognized therein applies equally to the operation or maintenance of equipment, an observation consistent with that of the New Mexico Court of Appeals. *See Garner v. Dep't of Corr.*, 1995-NMCA-103, ¶¶ 1, 4, 120 N.M. 547, 903 P.2d 858 (determining that an electric wire brush in a state prison paint shop was "equipment" for purposes of 41-4-6 and explaining that although courts had previously referred to Section 41-4-6 as a "premises liability" statute, the presence of the words "machinery" and "equipment" had the "effect of broadening the statute beyond only premises"); *see also McCurry v. City of Farmington*, 1982-NMCA-055, ¶ 14, 97 N.M. 728, 643 P.2d 292 (holding that firemen using their trucks and equipment in a training exercise came within the waiver for operation of machinery, equipment, and furnishings).

The Court also disagrees with Defendant Regents that Plaintiffs have failed to state a claim under Section 41-4-6 because they have failed to allege "bodily injury, wrongful death or property damage." § 41-4-6(A); Doc. 54 at 8. It is true that Plaintiffs do not allege in their Amended Complaint that Defendant Gwinn's negligent use of her cell phone or the negligent application of OMI policies and procedures during her OMI investigation caused Mr. Charley's death or resulted in bodily injury to him. Nor could they because, unfortunately, by the time the OMI investigation began, Mr. Charley was already deceased. Instead, Plaintiffs allege that Defendant Gwinn's actions as an OMI Field Investigator—which allegedly included making false statements meant to protect Defendant Gwinn and others from the actions they took as law enforcement officers—caused damages to Mr. Charley's estate. These damages, while admittedly unspecified, could only be

damages to the property of the estate given the nature of Plaintiffs' theory that Defendant Gwinn's actions prevented a comprehensive investigation into Mr. Charley's death and acted to shield the Town of Taos police officers from liability to the estate.

For this reason, the Court determines Defendant Regents have provided no legally sufficient basis to dismiss Plaintiffs' claim under Section 41-4-6 of the NMTCA.

### D. Plaintiffs Fail to Establish a Plausible Due Process Claim Against the Regents

Defendant Regents asserts that Plaintiffs' claims brought against it under the Twelfth Cause of Action of the Amended Complaint should be dismissed. Doc. 54 at 9-10. That cause of action purports to allege claims "[a]gainst all named Defendants" for violations of 42 U.S.C. § 1983 based on substantive due process. Doc. 21 at 42. According to Defendant Regents, Plaintiffs have not sufficiently pled this claim against it as nowhere in this cause of action do Plaintiffs make specific allegations against the Regents or its employee in her role as an OMI field investigator. Doc. 54 at 9.

In response, Plaintiffs state that they bring no claims against Defendant Regents through their Twelfth Cause of Action. Doc. 61 at 24 ¶ G. Instead, Plaintiffs claim that their substantive due process claims are found in their Eighth Cause of Action, titled "Due Process Violation – OMI Deputy Field Investigator Conduct (Defendant Gwinn in [H]er Individual and Official Capacities)." Doc. 21 at 38. That cause of action, however, only alleges facts pertaining to "Defendant Gwinn's wrongful actions as an OMI Deputy Field Investigator," and is completely devoid of any facts whatsoever concerning Defendant Regents. *See id*. ¶¶ 250-54. To the extent Plaintiffs' claim is that Defendant Regents is liable to them under a theory of *respondeat superior*, which is the only possible claim given the lack of facts pertaining directly to the Board of Regents, the Court finds that claim is not viable because, under Section 1983, there is no vicarious liability

which can be imputed to a governmental entity or agency. *See Bird v. W. Valley City*, 832 F.3d 1188, 1207–08 (10th Cir. 2016) ("A local government, however, cannot be held liable under [Section] 1983 solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [Section] 1983 on a respondeat superior theory." (internal quotation marks omitted)).[12]

For this reason, the Court determines that Plaintiffs have failed to state a plausible Section 1983 claim against Defendant Regents for a violation of substantive due process and will dismiss the claim without prejudice.

### E. Plaintiffs' Claims Against Defendant Regents for Loss of Consortium Must Be Dismissed Because There Is No Allegation or Plausible Claim that Defendant Regents Caused the Wrongful Death of Mr. Charley

Defendant Regents moves to dismiss Plaintiffs' claims for loss of consortium. Doc. 54 at 8-9. Defendant argues that a plaintiff who sues for loss of consortium damages must prove "that the alleged tortfeasor caused the wrongful injury or death of someone who was in a sufficiently close relationship to the plaintiff, resulting in harm to the relationship." *Id.* (quoting *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 14, 397 P.3d 1279). Defendant asserts that, although Plaintiffs broadly allege that all Defendants caused damages to the decedent's minor children, there are no specific allegations in the First Amended Complaint describing what act or omission by the Regents caused Mr. Charley's wrongful death. *Id*. at 9.

---

[12] Although a claim brought under Section 1983 cannot be based solely on vicarious liability or on a theory of respondeat superior, the Tenth Circuit has held that Section 1983 "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" that deprives the plaintiff of a constitutional or federal statutory right. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Here, Plaintiffs allege no facts under this cause of action that would state a plausible claim against the Regents for creating, promulgating or implementing a policy that deprived Plaintiffs or Mr. Charley of such a right.

18

Plaintiffs respond, arguing that *Thompson* also "stands for the proposition that loss of consortium claim[s] must not always be brought with the underlying tort claim, or that actual recovery for the underlying tort is a prerequisite for the recovery of loss of consortium damages." Doc. 61 at 19 (citing *Thompson*, 2017-NMSC-021, ¶ 17). Plaintiffs also point out that a loss of consortium claimant must demonstrate two elements in order to recover damages. *Id*. at 20 (citing *Wachocki v. Bernalillo Cty. Sheriff's Dep't*, 2011-NMSC-039, ¶ 5, 150 N.M. 650, 265 P.3d 701). "The first element is that the claimant and the injured party shared a sufficiently close relationship . . . The second element is a duty of care." *Id*. (quoting *Wachocki,* 2011-NMSC-039, ¶ 5). Plaintiffs then explain that "[Defendant] Regents and Defendant Gwinn had a duty of ordinary care to provide a proper investigation into Mr. Charley's death and their failure to do so as well as Defendant Gwinn's defamation of Mr. Charley during her investigation directly injured Rebecca Suazo and Mr. Charley's minor children." *Id*.

While the Court agrees that the legal principles cited by Plaintiffs are correct statements of the law concerning loss of consortium, Plaintiffs' argument completely misses the point made by Defendant Regents. Regardless of whether the Regents owed a duty of ordinary care to provide a proper investigation into Mr. Charley's death, or whether loss of consortium claims should or should not be brought with the underlying tort claim, it is still a basic requirement that, in order to bring a loss of consortium claim against a defendant, it must be shown that the defendant *caused* the death of someone who was in a sufficiently close relationship to the plaintiff, resulting in harm to the relationship. *See Thompson*, 2017-NMSC-021, ¶ 14; *see also Grano v. Weese*, No. 17-cv-0287 SMV/KK, 2017 WL 3051952, at *4 (D.N.M. June 27, 2017) ("A party may assert a loss of consortium claim against a tortfeasor who caused the injury or death of a person with whom the claimant shared a close relationship."). In this case, even taking all of Plaintiffs' allegations as true

19

and drawing all reasonable inferences therefrom in Plaintiffs' favor, there is no plausible claim that any action on the part of Defendant Regents *caused* the death of Mr. Charley. Instead, every alleged fact concerning Defendant Regent occurred after Mr. Charley had been struck and killed.

For these reasons, Plaintiffs claim for loss of consortium against Defendant Regents is dismissed with prejudice.

### F. Plaintiffs' Claims for Pre-Judgment Interest and Punitive Damages Against Defendant Regents Based On Claims Brought Under the NMTCA Must Be Dismissed Because They Are Expressly Excluded Under the Act

Finally, Defendant Regents moves to dismiss any claim Plaintiffs may have against it for pre-judgment interest or punitive damages. Doc. 54 at 10. Defendant cites to the NMTCA, which states that "[no] judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment." *Id.* (quoting N.M. STAT. ANN. § 41-4-19(D) (2007)).

Plaintiffs respond, relying on the "plain language" of the New Mexico Civil Rights Act ("NMCRA"), which states that "[t]he remedies provided for in the New Mexico Civil Rights Act are not exclusive and shall be in addition to any other remedies prescribed by law or available pursuant to common law." Doc. 61 at 23 (quoting N.M. STAT. ANN. § 41-4A-3(E) (2021)). According to Plaintiffs, the NMCRA is analogous to 42 U.S.C. § 1983, and the Supreme Court of the United States has recognized that punitive damages are available under Section 1983. *See id*. at 24 (citing *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247 (1981)). In addition, note Plaintiffs, the NMCRA allows for the recovery of pre-judgment interest because it is an additional remedy prescribed by law and the remedies under the NMCRA are not exclusive. *Id*. Plaintiffs thus

conclude that "this Court must find that punitive damages and pre[-]judgment interest are available under the NMCRA, and Defendants' Motion to Dismiss must be denied." *Id*.

The Court agrees with Defendant Regents that, for any claims brought against it pursuant to the NMTCA, punitive damages and pre-judgment interest are not remedies available to Plaintiffs. *See* § 41-4-19(D). As the Supreme Court of New Mexico has held, the NMTCA contains an "express grant of immunity to the state from liability for punitive damages in an action for a tort for which immunity has been waived." *Torrance Cnty. Mental Health Program v. N.M. Health & Env't Dep't*, 1992-NMSC-026, ¶ 16, 113 N.M. 593, 830 P.2d 145. The language of the same provision in the NMTCA similarly grants immunity for liability for pre-judgment interest. *See* § 41-4-19(D).

Plaintiffs' argument that punitive damages and, in the Court's discretion, pre-judgment interest are both available remedies under the NMCRA may have some merit. But the problem with Plaintiffs' argument is that, in this case, Plaintiffs allege no claims under the NMCRA. *See* Doc. 21. Plaintiffs do not respond to Defendant Regents' argument as it pertains to punitive damages under the NMTCA and, given the plain language of the statute and the recognition by the New Mexico Supreme Court concerning the non-availability of such damages under the Act, the Court finds that Plaintiffs' claims for punitive damages and pre-judgment interest—to the extent these remedies are sought under the NMTCA—must be dismissed with prejudice.

## IV.
## CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant Regents' Motion to Dismiss (Doc. 54), as stated herein.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE