**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DENNIS MURPHY, as PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH CLAIM OF NATHAN KEE CHARLEY, deceased, and REBECCA SUAZO,

Plaintiffs,

v. No. 1:24-cv-00963-DHU-LF

TAOS COUNTY BOARD OF COUNTY COMMISSIONERS, BRENT JARAMILLO, TAOS COUNTY MANAGER, TOWN OF TAOS, CHIEF OF POLICE JOHN WENTZ, in his individual and official capacity, OFFICER TAYLOR GWINN, in her individual and official capacity as a law enforcement officer and in her individual and official capacity as an investigator for the New Mexico Office of the Medical Investigator, THE REGENTS OF THE UNIVERSITY OF NEW MEXICO, OFFICER BRIAN GARCIA, in his individual and official capacity, and OFFICER ANTHONY MARTINEZ, in his individual and official capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs' Motion for Partial Summary Judgment to Determine Lack of Reasonable Suspicion and Probable Cause Against Defendants Gwinn, Garcia, Martinez and Town of Taos (Doc. 71), and Plaintiffs' Motion for Summary Judgment Against Defendant Garcia Under the Tort Claims Act and Section 1983 and Defendant Town of Taos for Spoliation of Evidence Under the New Mexico Tort Claims Act and the New Mexico Civil Rights Act for Due Process (Doc. 73).

Having considered the pleadings, briefing by the parties, the record before the Court, and the applicable law, the Court will **DENY** Plaintiffs' Motions for Summary Judgment.

## I.
## BACKGROUND

In prior decisions related to this matter, the Court has stated the facts alleged by Plaintiffs which form the basis of this suit. *See* Docs. 68, 93. Rather than restating the litigation background here, the Court incorporates the facts from its prior rulings and states, in summary, that this case involves the tragic death of Nathan Kee Charley, who was killed when he was struck by a vehicle on the evening of August 25, 2023.

Plaintiffs thereafter brought this lawsuit, asserting claims against, among others, the Town of Taos and three officers who interacted with Mr. Charley on the night of his death ("Taos Defendants"). *Id*. Now, prior to any discovery taking place, Plaintiffs move for partial summary on the second cause of action of their First Amended Complaint (titled "Violation of Nath Charley's Constitutional Right to Life and Liberty"), brought against the Taos Defendants. Plaintiffs also move for summary judgment on their ninth cause of action (titled "Spoliation of Evidence") against Defendant Garcia and the Town of Taos.

## II.
## LEGAL STANDARDS

A party is entitled to summary judgment "if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). The movant bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A dispute is "genuine" if there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "A fact is material if it can have an impact on the outcome of the lawsuit." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021) (internal quotation marks and citation omitted). The district court's role in analyzing a motion for summary judgment is to simply "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005) (internal quotation marks and citation omitted). At this stage, the nonmoving party is entitled to all reasonable inferences from the record. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013).

## III. FINDINGS OF FACT

In their Motions, Plaintiffs assert a number of undisputed facts to show that Taos Police Officers Garcia, Martinez, and Gwinn ("Taos Police Officers") lacked reasonable suspicion and probable cause to seize Mr. Charley on the night of his death. Although the parties quibble about the exact words used by both Mr. Charley and the Taos Police Officers during their interaction on the night of Mr. Charley's death, the Court, having reviewed the parties' submissions, including the lapel camera videos submitted as exhibits, finds the following facts relevant to Plaintiffs' Motions:

1. On August 25, 2023, Taos Police Officers first made contact with Mr. Charley when they responded to a call for service for an intoxicated person at the home of Rebecca Suazo, Mr. Charley's partner. UMF 1.[1]

---

[1] Defendants contend that the call that the Taos Officers responded to was for "male partner is very drunk and out of control." Doc. 77 at 2. The Court finds this discrepancy immaterial.

2. Defendant Martinez interacted with Mr. Charley outside of the residence and Mr. Charley denied that anything physical had occurred between him and Ms. Suazo, stating, "I am just drunk." UMF 2, 3.

3. When officers spoke to Ms. Suazo inside her home, they asked if any altercation had taken place in the home, to which she replied that Mr. Charley just starts talking weird and scary. UMF 9.

4. While talking with the Taos Police Officers, Ms. Suazo indicated that she did not want Mr. Charley to remain at the residence. UMF 8.

5. While Officer Garcia and Martinez were interviewing Ms. Suazo, Defendant Gwinn remained outside questioning Mr. Charley. UMF 12.

6. While outside, Mr. Charley told Defendant Gwinn that he did not have a place to go in Taos that night. UMF 13.

7. Defendant Gwinn, without speaking to the other officers or Ms. Suazo, told Mr. Charley that he could not remain at the residence. UMF 14.

8. Defendant Garcia approached Mr. Charley outside the home and stated, "where can we give you a ride tonight, because tonight you're not going to stay here." UMF 15.

9. Defendant Garcia informed Mr. Charley that he would not be able to take Mr. Charley to the shelter because he was intoxicated and the shelter would not accept him there. UMF 16.[2]

---

[2] In their Undisputed Material Facts 17, Plaintiffs state that "Defendant Garcia ordered Mr. Charley to leave the home and sleep it off, telling him that the only choice Defendant Garcia would give him was get up and to leave the property in Defendant Garcia's vehicle, or otherwise Mr. Charley may end up in jail." UMF 17. The Taos Defendants respond that this is a mischaracterization of the conversation between Defendant Garcia and Mr. Charley at that time. Upon review of the lapel video recording, the Court agrees. There is no indication in Defendant Garcia's lapel video recording that he "ordered" Mr. Charley to do anything. Instead, after Mr. Charley tells Defendant

10. Mr. Charley told Defendant Garcia, "Look, if [Ms. Suazo] says to take me out of here, then let's go. I'll go somewhere." Doc. 71, Ex. 3 at 22:52:20-22:53.

11. Mr. Charley was escorted by the Defendant Officers to Defendant Garcia's vehicle, where he was searched and patted down. UMF 19.

12. Mr. Charley asked Defendant Garcia if he can go somewhere to sleep it off "like a bunny rabbit." UMF 22.

13. Defendant Garcia did not tell Mr. Charley where he would be taking him. UMF 25.

14. Defendant Garcia was not taken to jail. UMF 27.

15. Defendant Garcia turned off his On Body Recording Device ("OBRD") after placing Mr. Charley in his patrol unit. UMF 28.

16. Defendant Garcia did not record the interactions he had with Mr. Charley after placing him in his patrol unit, including dropping him off at the Speedway. UMF 29.

17. The Taos Police Officers did not have reasonable suspicion or probable cause that Mr. Charley had committed a crime, and Mr. Charley was not charged with any crime. UMF 30, 31.

---

Garcia to "take [him] out of here" if that is what Ms. Suazo wants, Defendant Garcia told Mr. Charley that leaving would be his choice and that Mr. Charley needed to "sleep it off." Doc. 71, Ex. 3 22:52:20-22:53. The Court also determines that Defendant Garcia did not tell Mr. Charley that the only choice Defendant Garcia would give him was to leave the property in Defendant Garcia's vehicle or otherwise he may end up in jail. To characterize the conversation in this manner implies that Defendant Garcia threatened Mr. Charley with arrest and jail time, where in fact what he told Mr. Charley was that he [Defendant Garcia] "did not want anything to escalate" and that "[Mr. Charley did not] need to end up in jail tonight." *Id*.

## IV.
## DISCUSSION

### A. Plaintiffs' Request for Partial Summary Judgment to Determine Lack of Reasonable Suspicion and Probable Cause.

Through their first Motion for Partial Summary Judgment, Plaintiffs request that this Court determine that they are entitled to judgment as a matter of law on their claim that the Taos Defendants violated Mr. Charley's constitutional right to life and liberty when they seized and arrested him even though they lacked reasonable suspicion and probable cause.[3] More specifically, Plaintiffs argue that they are entitled to summary judgment on their federal constitutional claim because the Taos Officers had no reasonable suspicion to initially detain Mr. Charley pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). Plaintiffs assert that at no point did the Taos Officers have a particularized and objective basis for suspecting Mr. Charley was involved in any criminal activity. Doc. 71 at 7-8 10-12. Plaintiffs further allege that because the Taos Defendants' detention of Mr. Charley exceeded the limits of a *Terry* stop, it then became an arrest that required probable cause, which was lacking in this case. *Id*. at 8, 10-12. Plaintiffs sum up their federal claim by stating that the Taos Officers "commands and escort and detention in a police vehicle restricted Mr. Charley's movements sufficient for a seizure under the Fourth Amendment, because an objective person in Mr. Charley's position would believe that their movements were restricted." *Id.* at 12. As to their state constitutional claim brought under Article II, Section 10 of the New Mexico Constitution, Plaintiffs argue that this provision provides even more protections from unreasonable seizures than its counterpart in the federal constitution. *Id*. at 13. Plaintiffs argue that

[3] Plaintiffs' claims in their second cause of action are brought under the New Mexico Civil Rights Act, N.M. STAT. ANN. §§41-4A-1 through 41-4A-13, for alleged violations of the New Mexico Constitution, and 42 U.S.C. § 1983, for the alleged violations of the United States Constitution.

the Taos Defendants violated Mr. Charley's rights under the state constitution when,"[d]espite the lack of lawful justification, Defendant Officers surrounded Mr. Charley and Defendant Garcia ordered Mr. Charley to leave with him in a patrol vehicle, to an uncertain destination at Defendant Garcia's discretion." *Id.* at 14.

The Taos Defendants respond that, while it is true that the Taos Officers "had no reason or cause to arrest Mr. Charley," they are not liable for any constitutional violations because Mr. Charley was not detained for any violation of a criminal statute or ordinance. Doc. 77 at 11. Instead, argue Defendants, "he was offered a courtesy ride to what was thought to be a safe location while he waited for family that he told Defendant Garcia would come for him." *Id.* at 13. The Taos Defendants also appear to question whether the principles of reasonable suspicion and probable cause are relevant in civil litigation as opposed to criminal prosecutions. *Id*.

The Court agrees with Plaintiffs that, even outside criminal prosecutions, the Fourth Amendment guarantees a person's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; *see also Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007). Plaintiffs also correctly note that, pursuant to well-established law: 1) officers can stop and briefly detain a person for investigative purposes only if the officer has a reasonable suspicion that criminal activity is afoot; and 2) when a police encounter with an individual exceeds those limits, the detention becomes an arrest that must be supported by probable cause. *See Terry*, 392 U.S. at 20; *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) ("An encounter between police and an individual which goes beyond the limits of a *Terry* stop, however, may be constitutionally justified only by probable cause or consent.").

But, as explained by the Tenth Circuit Court of Appeals, it is also the case that, "[e]ncounters are initiated by the police for a wide variety of purposes, some of which are wholly

unrelated to the desire to prosecute crime." *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993). As such, "police officers are not only permitted, but expected, to exercise what the Supreme Court has termed 'community caretaking functions.'" *Id*. (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523 (1973)). When law enforcement officers act in this non-investigatory, community caretaking capacity, they may have occasion to seize a person to "ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *Id*. (citing *United States v. Rideau*, 949 F.2d 718, 720 (5th Cir. 1991)); *see also United States v. Purvis*, 663 F. Supp. 3d 1233, 1249 (D.N.M. 2023). Similarly, under New Mexico law, law enforcement officers are encouraged to act for the protection of intoxicated and incapacitated persons, even being granted immunity from civil liability when they take reasonable measures under the authority of the New Mexico Detoxification Reform Act, N.M. STAT. ANN. §§ 43-2-1.1 through 43-2-23.

Upon reviewing the parties' briefs and the evidence cited therein, the Court determines that there exists several genuine issues of material fact which are in dispute and which concern the nature of the encounter between the Taos Officers and Mr. Charley, precluding summary judgment on Plaintiffs' second cause of action. Although there is no dispute that the Taos Officers lacked reasonable suspicion and probable cause to believe Mr. Charley had committed a crime, the parties disagree as to whether the officers ultimately seized and arrested Mr. Charley. Plaintiffs allege facts which they claim show that Mr. Charley was "ordered" by Taos Officers to leave with them or be arrested later and was thereby "forced to submit to the Defendant Officers' commands to leave with them in their custody." Doc. 71 at 11-12. On the other hand, the Taos Defendants argue and present evidence that Mr. Charley voluntarily agreed to leave Ms. Suazo's apartment, that the Taos Officers were acting only to protect him because he was intoxicated, ultimately giving Mr. Charley a courtesy ride to the Speedway Station in El Prado after he advised Defendant Garcia

that he had family that would come for him. Doc. 77 at 6-8. This dispute lies at the heart of this case and is therefore genuine and material, precluding summary judgment on the issue.

**B. Plaintiffs' Motion for Summary Judgment on Their Spoliation of Evidence Claim.**

Plaintiffs also request that this Court determine they are entitled to judgment as a matter of law on their claim for spoliation of evidence, which they bring under the New Mexico Tort Claims Act and the New Mexico Civil Rights Act. Doc. 73. According to Plaintiffs, the Taos Defendants are liable for spoliation as a matter of law because Defendant Garcia turned off his OBRD after Mr. Charley entered his patrol vehicle and thus did not record the conversation he and Mr. Charley had while in Defendant Garcia's police unit, including any purported statement by Mr. Charley that he had family members who would pick him up at the Speedway gas station. *Id.* 1-2. Plaintiffs argue that under New Mexico statute, Defendant Garcia was required to keep his OBRD on during his interaction with Mr. Charley and his failure to do so constituted spoliation of evidence. *Id*. at 7-14 (citing N.M. STAT. ANN. § 29-1-18 (2023)).

The Taos Defendants respond in opposition, primarily asserting that the facts indicate Mr. Charley voluntarily agreed to leave Ms. Suazo's apartment when he was told she did not want him to remain there, and that he was given a ride to the Speedway station after advising Defendant Garcia that he had family that would come for him. Doc. 78 at 8. According to Defendants, Defendant Garcia only turned off his body worn camera when the incident went from an investigative encounter to a courtesy ride. *Id*.

Again, Plaintiffs' position that they are entitled to judgement as a matter of law on their spoliation of evidence claim hinges on the nature of the interaction between Mr. Charley and the Taos Officers, and more specifically on whether Mr. Charley was unlawfully seized or arrested and was in the custody of Defendant Garcia while being transported in the officer's patrol car. On

this issue, as stated above, the Court finds there are several issues of genuine and material facts that remain in dispute and are more appropriately left for a jury's determination. It may be that Defendant Garcia was required by New Mexico statute to activate his OBRD during the call involving Mr. Charley and not turn off the OBRD "until the conclusion of [the] law enforcement or investigative encounter." N.M. Stat. Ann. § 29-1-18 (A)(2). However, as discussed above, there is a real dispute as to whether, at the time Defendant Garcia transported Mr. Charley to the gas station, the encounter no longer involved a criminal investigation but was instead a courtesy ride by Defendant Garcia as part of his community care-taking obligations. Because these disputed issues of fact exist, Plaintiffs' motion for summary on their spoliation of evidence claim must be denied.

## V.
## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment to Determine Lack of Reasonable Suspicion and Probable Cause Against Defendants Gwinn, Garcia, Martinez and Town of Taos (Doc. 71), and Plaintiffs' Motion for Summary Judgment Against Defendant Garcia Under the Tort Claims Act and Section 1983 and Defendant Town of Taos for Spoliation of Evidence Under the New Mexico Tort Claims Act and the New Mexico Civil Rights Act for Due Process (Doc. 73), are **DENIED WITHOUT PREJUDICE**.[4]

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

[4] Although the Court dismisses Plaintiffs' Motions for Summary Judgment **WITHOUT PREJUDICE**, the Court will not consider any further dispositive motions from either party until after discovery has closed in this case.